UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MACQUARIE EQUIPMENT CAPITAL INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>LA SEMICONDUCTOR LLC, an Ohio limited liability company,<br><br>    Defendant. | Case No. 4:24-cv-00120-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff Macquarie Equipment Capital Inc.'s unopposed Motion for Judgment on the Pleadings (Dkt. 12). The Court will grant the motion with respect to the first claim, for breach of contract, but will deny the motion with respect to the second and third claims, for conversion and replevin. As will be explained, the pleadings do not establish that Defendant LA Semiconductor refused to return the leased equipment to Macquarie. Rather, in answering the complaint, LA Semiconductor admits that Macquarie demanded the return of the property but says that in response to that demand, it "requested consultation with Plaintiff to identify property not covered by Plaintiff's interest, minimize the disruption in removal and do so in an orderly fashion." *Answer,* Dkt. 8, ¶ 51.

Because the Court must draw all reasonable inferences in LA Semiconductor's favor, these alleged facts prevent the Court from granting Macquarie's motion as to the conversion and replevin claims.

## FACTS

LA Semiconductor operates a semiconductor foundry in Pocatello, Idaho. In October 2022, LA Semiconductor agreed to lease equipment from Macquarie for use in the foundry. The terms of that agreement were memorialized in an October 14, 2022 Master Lease Agreement. As set forth in that agreement, the parties agreed to a base lease term of 57 months, to commence on January 13, 2023, and LA Semiconductor agreed to pay $850,000 monthly rent for the first two years. After that, the rent was scheduled to increase to $1,227,000 per month. The parties agreed that Macquarie could inspect the leased equipment (as well as maintenance and other records related to the equipment) so long as it provided 48 hours' advance notice to LA Semiconductor. If, however, a "Default" or "Event of Default" (as defined in the Master Lease Agreement) had occurred and was continuing, Macquarie did not have to provide advance notice before inspecting the equipment.

Under the Master Lease Agreement, the parties agreed that an Event of Default would be deemed to have occurred following: (a) non-payment of Basic Rent on the applicable due date; (b) nonpayment of any Other Payment within five

days after it is due; (c) failure to maintain, use or operate the Equipment in compliance with the terms of the Lease; and (d) breach by LA Semiconductor of any agreement under any other Lease Documents, including the Forbearance Agreement, that continues for thirty days after notice to LA Semiconductor. *See Compl.*, Dkt. 1, ¶ 18.

In September 2023—less than a year after entering into the lease—LA Semiconductor failed to make its monthly rent payment. The parties then entered into an amendment, called the "Schedule Amendment," under which they agreed that the payments due in September, October, and November 2023 would each be deferred by one year. *Id.* ¶ 23. After that, LA Semiconductor apparently made the December 2023 rent payment but failed to make the January 2024 payment. The parties then entered into a Forbearance Agreement, under which Macquarie agreed to waive and forbear the January 2024 default until February 6, 2024, so long as LA Semiconductor took various actions, including paying the January 13, 2024 rent payment by February 6, 2024 along with a late fee, for a total payment of $902,560.27. LA Semiconductor also agreed to grant Macquarie access to the premises where the equipment was located for the purposes of inspecting the equipment, the facility, and the applicable maintenance records. LA Semiconductor did not make the agreed-upon payment by February 6, 2024, and the equipment inspection did not occur. This lawsuit followed.

LA Semiconductor does not deny that it failed to make the various rent payments described above, though it says that an unidentified third party is the cause of these defaults. *See Answer,* Dkt. 8, ¶¶ 2, 4, 26, 33, 39, 43, 45, 49. As for the equipment inspection, LA Semiconductor admits that the inspection did not occur, but it says this is so because "LA Semiconductor has requested consultation with Plaintiff to identify property not covered by Plaintiff's interest, minimize the disruption in removal and do so in an orderly fashion." *Id.* ¶ 51.

A few weeks later, on February 29, 2024, Macquarie sued, alleging three claims for relief: (1) breach of contract; (2) conversion; and (3) replevin. After LA Semiconductor answered the complaint, Macquarie moved for judgment on the pleadings on all three claims. LA Semiconductor does not oppose the motion.

## LEGAL STANDARD

Plaintiff brings this motion under Federal Rule of Civil Procedure 12(c). Rule 12(c) motions may be made by "any party," and unlike a Rule 12(b)(6) motion, which implicates only the allegations in the complaint, a Rule 12(c) motion "implicates the pleadings as a whole." *Ibanez v. U.S. Bank Nat'l Ass'n*, 856 F. Supp. 2d 273, 275 (D. Mass. 2012).

The legal standard governing Rule 12(c) motions is the same as that applied to Rule 12(b)(6) motions: Judgement on the pleadings is appropriate when, even if all materials facts in the pleading under attack are true, the moving party is entitled

to judgment as a matter of law. *See Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Typically, Rule 12(c) motions are made by the defendant, which means the complaint is the pleading under attack. But in this case, the plaintiff is the moving party, which means that if the answer raises issues of fact or affirmative defenses, which, if proved, would defeat plaintiff's recovery, the motion must be denied. *See Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,* 887 F.2d 228, 230 (9th Cir. 1989). Further, all inferences reasonably drawn from the facts must be construed in favor of the defendant. *Id.* at 925. And while Rule 12(c) does not expressly provide for partial judgment on the pleadings, neither does it bar such a procedure, and it is common to apply Rule 12(c) individual claims within a multi-count complaint. *See Strigliabotti v. Franklin Res., Inc.*, 398 F. Supp. 2d 1094, 1097 (N.D. Cal. 2005); *see generally* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* ¶ 9:340.

Finally, as with Rule 12(b)(6) motions, if matters outside the pleadings are presented to and not excluded by the court, the motion for judgment on the pleadings can be converted to a Rule 56 summary-judgment motion. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). However (also like Rule 12(b)(6) motions), the mere fact that such extrinsic material was submitted to the court does not automatically convert a motion for

judgment on the pleadings into one for summary judgment. It must appear that the court relied on the extrinsic evidence in reaching its conclusions. *See Yakima Valley Mem'l Hosp. v. Washington State Dept. of Health*, 654 F.3d 919, 925, n.6 (9th Cir. 2011) (court has discretion not to convert the motion).

## ANALYSIS

The Court will begin with the contract claim. The analysis on that claim is relatively straightforward. In short, because LA Semiconductor does not dispute that the various defaults outlined in the complaint have occurred, Macquarie is entitled to judgment on the pleadings on that claim. Granted, LA Semiconductor has offered up an excuse for breaching the contract. In its answer, LA Semiconductor repeatedly alleges that the contractual defaults at issue were caused by an unidentified third party. The Court will assume the truth of those allegations for purposes of resolving this motion, but they are ultimately irrelevant, given the hell-or-high-water clause contained in the Master Lease Agreement. *See Wells Fargo Bank Minnesota v. BrooksAmerica Mortg. Corp.,* 2004 WL 2072358, at *9 (S.D.N.Y. Sept. 14, 2004), *aff'd sub nom. Wells Fargo Bank, Nat'l Ass'n v. BrooksAmerica Mortg. Corp.,* 419 F.3d 107 (2d Cir. 2005). Under the terms of that clause, LA Semiconductor's obligations to pay rent and to otherwise perform its contractual obligations are "absolute and unconditional and shall not be affected by any circumstances whatsoever, including any right of setoff, counterclaim,

recoupment, deduction, defense or other right which Lessee [LA Semiconductor] may have against Lessor [Macquarie], . . . or anyone else, for any reason whatsoever." *Master Lease Agreement,* ¶ 2, Dkt. 12-3. Under New York law, which governs the parties' agreements, such clauses are of "ironclad enforceability." *Wells Fargo*, 2004 WL 2072358, at 9. Accordingly, LA Semiconductor cannot escape its contractual obligations by blaming a third party for causing the defaults. Indeed, Macquarie advanced this very argument in its moving papers, *see Mtn. Memo,* Dkt. 12-2, at 11-12, and LA Semiconductor failed to respond—implicitly conceding the point. Macquarie is therefore entitled to judgment as a matter of law on the contract claim.

  The Court will deny the motion, however, with respect to the second and third claims, for conversion and replevin. Under New York law, to establish conversion, the plaintiff must demonstrate (1) legal ownership or an immediate right of possession to a specific identifiable thing and (2) that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's right. *See Giardini v. Settanni*, 70 N.Y.S.3d 57, 58 (N.Y. App. Div. 2018). And to establish a claim for replevin, plaintiff must prove (1) that plaintiff has a possessory right superior to that of defendant; and (2) that plaintiff is entitled to immediate possession of that property. *See Deleon v. Charlie Auto Sales, Inc.*, 110 N.Y.S.3d 899 (N.Y. Civ. Ct. 2018). The key difference between replevin and

conversion is that the remedy for replevin is the return of the item in question, while conversion allows the plaintiff to recover the item or money damages. *See generally* F. Andrew Hessick, *Doctrinal Redundancies*, 67 Ala. L. Rev. 635, 648 (2016). But, with respect to either claim, if the defendant originally held the property lawfully—which is the case here—then the defendant must refuse plaintiff's demand for the return of the property before plaintiff is able to make out a claim for conversion or replevin. *See, e.g., McEntee v. New Jersey Steamboat Co.*, 45 N.Y. 34, 37 (1871) (conversion); *Bradley v. Roe*, 27 N.E.2d 35, 39 (N.Y. 1940) (conversion); *Menzel v. List*, 253 N.Y.S.2d 43 (N.Y. App. Div. 1964) ("Demand upon, and refusal of, the person in possession of the chattel to return it being the essential elements of a cause of action in replevin"); *see generally N.Y. Pattern Jury Instr.—Civil 3:11* (citing and discussing various cases). More to the point, a *qualified* refusal may not support plaintiff's conversion or replevin action. In that situation, the jury would need to determine if the qualification was reasonable, made in good faith, and not unreasonably prolonged. New York's pattern jury instructions put it this way: "Whether the refusal was qualified, and, if so, whether it was reasonable and was the true reason for not delivering the property will generally be a question for the jury." *See N.Y. Pattern Jury Instr.—Civil* 3:11. Here, when all factual inferences are drawn in favor of LA Semiconductor, LA Semiconductor did not refuse to return the items. Instead, it

appears that LA Semiconductor is prepared to return the equipment to Macquarie and has simply requested that Macquarie work with it to "identify the property not covered by Plaintiff's interest, minimize the disruption in removal and do so in an orderly fashion." *Answer,* Dkt. 8, ¶ 51. Given those allegations, Macquarie is not entitled to judgment on the pleadings as to the conversion and replevin claims.

## ORDER

**IT IS ORDERED that** Plaintiff's Motion for Judgment on the Pleadings (Dkt. 12) is **GRANTED IN PART and DENIED IN PART**. The motion is granted with respect to the first claim for relief but denied as to the second and third claims for relief.

DATED: June 26, 2024

_____
B. Lynn Winmill
U.S. District Court Judge