UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MACQUARIE EQUIPMENT CAPITAL INC., a Delaware corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LA SEMICONDUCTOR LLC, an Ohio limited liability company,<br><br>　　　　Defendant. | Case No. 4:24-cv-00120-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Plaintiff Macquarie Equipment Capital Inc.'s Motion for Final Judgment and for an Award of Attorney's Fees (Dkt. 21). Macquarie has since withdrawn its request for attorneys' fees, but it asks the Court to enter a final judgment that includes (1) nearly $178 million in monetary damages, and (2) an order directing Defendant LA Semiconductor LLC to return leased equipment to Macquarie. For the reasons explained below, the Court will order LA Semiconductor to return the leased equipment to Macquarie and reserve ruling on Macquarie's request for a monetary judgment.

## BACKGROUND

### A. The Relevant Lease Terms

LA Semiconductor operates a semiconductor foundry in Pocatello, Idaho. In October 2022, LA Semiconductor agreed to lease equipment from Macquarie for use in the foundry. (Throughout this decision, the Court will refer to all such leased equipment as "the Equipment.") The terms of that agreement were memorialized in an October 14, 2022 Master Lease Agreement. As set forth in that agreement, the parties agreed to a base lease term of 57 months, to commence on January 13, 2023, and LA Semiconductor agreed to pay $850,000 monthly rent for the first two years. After that, the rent was scheduled to increase to $1,227,000 per month. The parties agreed that Macquarie could inspect the leased Equipment (as well as maintenance and other records related to the Equipment) so long as it provided 48 hours' advance notice to LA Semiconductor. If, however, a "Default" or "Event of Default" (as defined in the Master Lease Agreement) had occurred and was continuing, Macquarie did not have to provide advance notice before inspecting the Equipment.

Under the Master Lease Agreement, the parties agreed that an Event of Default would be deemed to have occurred following: (a) non-payment of Basic Rent on the applicable due date; (b) nonpayment of any Other Payment within five days after it is due; (c) failure to maintain, use or operate the Equipment in

compliance with the terms of the Lease; and (d) breach by LA Semiconductor of any agreement under any other Lease Documents, including the Forbearance Agreement, that continued for thirty days after notice to LA Semiconductor. *See Compl.*, Dkt. 1, ¶ 18.

**B.     LA Semiconductor's Breach of the Lease**

In September 2023—less than a year after entering into the lease—LA Semiconductor failed to make its monthly rent payment. The parties then entered into an amendment, called the "Schedule Amendment," under which they agreed that the payments due in September, October, and November 2023 would each be deferred by one year. *Id.* ¶ 23. After that, LA Semiconductor apparently made the December 2023 rent payment but failed to make the January 2024 payment. The parties then entered into a Forbearance Agreement, under which Macquarie agreed to waive and forbear the January 2024 default until February 6, 2024, so long as LA Semiconductor took various actions, including paying the January 13, 2024 rent payment by February 6, 2024 along with a late fee, for a total payment of $902,560.27. LA Semiconductor also agreed to grant Macquarie access to the premises where the Equipment was located for the purposes of inspecting the Equipment, the facility, and the applicable maintenance records. LA Semiconductor did not make the agreed-upon payment by February 6, 2024, and the inspection did not occur.

### C. Macquarie Prevails on the Contract Claim

A few weeks later, on February 29, 2024, Macquarie sued, alleging three claims for relief: (1) breach of contract; (2) conversion; and (3) replevin. After LA Semiconductor answered the complaint, Macquarie moved for judgment on the pleadings on all three claims. LA Semiconductor did not oppose the motion. In June 2024, this Court granted the motion with respect to the contract claim but denied it with respect to the conversion and replevin claims. Macquarie then voluntarily dismissed the conversion and replevin claims and now asks the Court to determine the amount of damages it has suffered and include that amount in a final judgment.

## ANALYSIS

Macquarie brings this motion under Federal Rule of Civil Procedure 54(c), which provides that, except for default judgments, every final judgment "should grant the relief to which the party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(d). Here, as just noted, the Court has already determined that Macquarie is entitled to judgment on its contract claim. The question now is what remedies should be incorporated within that judgment. Macquarie says that the judgment should include the following:

(1) **Return of the Equipment:** An order directing Defendant LA Semiconductor to immediately return all leased Equipment to Macquarie;

(2) **Accrued and Unpaid Rent:** $5.1 million in past due rent, which represents

    six months' worth of payments for January through June 2024. ($850,000 x 6 = $5,100,000.00);

(3) **Future Rent:** $48,788,219.00, which is calculated by determining the present value of all rent payments that would have been made throughout the life of the lease;

(4) **The Expected Fair Market Value of the Equipment:** The present value of the expected fair market value of the Equipment as of the maturity date, which Macquarie says is $118,089,096.00; and

(5) **Late Charge & Interest:** Late charges and interest in the amount of $5,945,744.00.

*See Stevens Dec.*, ¶ 8, Dkt. 23-1. The total monetary judgment being sought is $177,923,059.00.[1]

Macquarie's request for an order directing LA Semiconductor to immediately return the Equipment is unopposed, and the Lease Agreement plainly states that upon an Event of Default the leased Equipment shall be returned. Accordingly, the Court will grant this aspect of the motion.

As for the remaining requests, the Court will reserve ruling until after it has had a chance to hear the parties' arguments. To be sure, there is no question that LA Semiconductor breached its obligations under the lease by failing to pay rent and that Macquarie will be entitled to a substantial monetary judgment. But under

---

[1] Note that the Court is using the amounts set forth in the reply brief. *See Reply,* Dkt. 23, at 4-6. Further, Macquarie initially sought an award of attorneys' fees as well but later withdrew that request. *See id.* at 7.

the parties' agreement, the amount of damages owing to Macquarie appears to depend on future events, including, among other things whether Macquarie elects to re-lease or re-sell the Equipment and whether those efforts are successful. *See Lease Agmt.*, Dkt. 12-3, ¶ 16(b)(1), (2); *see also id.* ¶ 16(a)(providing that the Liquidated Damages Macquarie is entitled to receive will depend on "the recovery and disposition of the Equipment . . . ."). Before the Court determines the final amount owing to Macquarie, it will need additional information regarding what steps Macquarie takes after the Equipment is returned.[2] Additionally, in its reply brief, Macquarie indicated that if LA Semiconductor returns the Equipment to Macquarie, then LA Semiconductor would be entitled to a $118,089,096 credit against the judgment. Again, the Court would prefer to hold off on determining the amount of damages and entering judgment until LA Semiconductor has either returned the Equipment or clarified that it will not do so.

## ORDER

**IT IS ORDERED that** Plaintiff's Motion for Final Judgment and for an

---

[2] The Court recognizes that Macquarie may resell or release the Equipment even before it is returned. *See Master Lease Agmt,* Dkt. 12-3, ¶ 16 (a)(5) (providing that upon an Event of Default, Macquarie is free to "sell, re-lease or otherwise dispose of any or all of the Equipment, whether or not in Lessor's possession, at public or private sale, with or without notice to the Lessee; and apply or retain the net proceeds of such disposition, with Lessee remaining liable for any deficiency and with any excess being retained by Lessor; . . . ."). But there is no indication that any such sale or lease has taken place.

Award of Attorney's Fees (Dkt. 21), is **GRANTED IN PART, DEEMED MOOT IN PART,** and **RESERVED IN PART**, as follows:

1. Plaintiff's unopposed request for an order directing defendant to return the leased Equipment is **GRANTED.** <u>Defendant</u> shall return the Equipment to Macquarie within 7 days of this Order.

2. Plaintiff's Request for an Award of Attorney's Fees is **DEEMED MOOT.**

3. The Court will **RESERVE RULING** on Plaintiff's Request for a Monetary Damages Award. The Court will resolve that issue after conducting a hearing and hearing the parties' arguments. That hearing will set by separate notice.

DATED: December 3, 2024

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 7